## MOTUNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DR. STELLA IMMANUEL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:21-CV-00587** |
| | § | |
| ANDERSON COOPER | § | |
| -and- | § | |
| CABLE NEWS NETWORK, INC. | § | |
| | § | |
| Defendants. | § | |

## CABLE NEWS NETWORK, INC.'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

*/s/ Robert P. Latham*
Robert P. Latham
State Bar No. 11975500
blatham@jw.com
Demi S. Williams
State Bar. No. 24084101
dswilliams@jw.com
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile

Katherine M. Bolger
katebolger@dwt.com
Sam F. Cate-Gumpert
samcategumpert@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
(212) 489-8230
(212) 489-8340
*Pro Hac Applications Submitted*

**ATTORNEYS FOR CABLE NEWS
NETWORK, INC.**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF ISSUES PURSUANT TO LOCAL CIVIL RULE 7(A)(1) ................ 3

III.    STATEMENT OF FACTS ................................................................................... 3

        1.      The Parties ................................................................................... 3

        2.      COVID-19 ..................................................................................... 4

        3.      Dr. Immanuel's And Trump's Promotion Of Hydroxychloroquine. ..................... 4

        4.      CNN Opines On Dr. Immanuel and HCQ. ............................................. 5

        5.      Dr. Immanuel Files The Instant Complaint ........................................... 6

IV.     LEGAL STANDARD ........................................................................................ 7

V.      ARGUMENT ................................................................................................... 9

        1.      Dr. Immanuel Failed To State A Plausible Defamation Claim ........................... 9

                A.      All The Challenged Statements Regarding Dr. Immanuel's
                        Sermons Or Views On HCQ Are Substantially True. ................................ 9

                B.      This Court Cannot Decide Scientific Truth In a Defamation Action ....... 13

                C.      Many Of The Challenged Statements Are Privileged As Fair
                        Comment ........................................................................................ 16

                D.      Most Of The Challenged Statements Are Constitutionally
                        Protected Opinion. ......................................................................... 19

                E.      Several Challenged Statements Are Not "Of And Concerning" Dr.
                        Immanuel. ..................................................................................... 22

        2.      Dr. Immanuel Failed To Plausibly Plead Defamation By Implication ................. 24

        3.      Dr. Immanuel Failed To Plausibly Allege CNN Acted With Actual Malice ....... 26

VI.     CONCLUSION ............................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Broadcasting Cos., Inc. v. Gill*,
  6 S.W.3d 19 (Tex. App.–San Antonio 1999, pet. denied) .......................................19

*Arthur v. Offit*,
  No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010).....................................14, 15

*Bentley v. Bunton*,
  94 S.W.3d 561 (Tex. 2002)........................................................................17, 19, 20

*Brewer v. Capital Cities/ABC, Inc.*,
  986 S.W.2d 636 (Tex. App.—Forth Worth 1998, no pet.)..........................................17, 18, 20

*Brueggemeyer v. Am. Broadcasting Co.*,
  684 F. Supp. 452 (N.D. Tex. 1988) ..................................................................28

*Busch v. Viacom Int.*,
  477 F. Supp. 2d 764 (N.D. Tex. 2007) ...............................................................8

*Carr v. Brasher*,
  776 S.W.2d 567 (Tex. 1989)......................................................................19, 29

*Chevalier v. Animal Rehab. Ctr., Inc.*,
  839 F. Supp. 1224 (N.D. Tex. 1993) .................................................................27

*Corsi v. Infowars, LLC*,
  No. A-20-CV-298-LY, 2021 WL 2115272 (W.D. Tex. May 25, 2021), *report
  and recommendation adopted*, No. 1:20-CV-298-LY, 2021 WL 4955914
  (W.D. Tex. June 25, 2021)..........................................................................9

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975)................................................................................16

*Cox Texas Newspapers, L.P. v. Penick*,
  219 S.W.3d 425 (Tex. App.-Austin, 2007, rev. denied)............................................23, 28, 30

*Croce v. New York Times Co.*,
  930 F.3d 787 (6th Cir. 2019) .......................................................................14

*Dallas Morning News, Inc. v. Tatum*,
  554 S.W.3d 614 (Tex. 2018)........................................................................24

*Davis v. Costa-Gavras*,
  654 F. Supp. 653 (S.D.N.Y. 1987)...................................................................30

*Diamond Shamrock Ref. & Mktg. Co. v. Mendez*,
    844 S.W.2d 198 (Tex. 1992)......................................................................9

*Dolcefino v. Turner*,
    987 S.W.2d 100 (Tex. App.-Houston [14th Dist.] 1998), *aff'd, Turner v.*
    *KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000) ............................................29

*Duffy v. Leading Edge Prods., Inc.*,
    44 F.3d 308 (5th Cir. 1995) ...................................................................28

*Dunn v. Gannett*,
    833 F.2d 446 (3d Cir. 1987)....................................................................21

*Eastman Chem. Co. v. Plastipure, Inc.*,
    775 F.3d 230 (5th Cir. 2014) ...................................................................16

*Edwards v. Schwartz*,
    378 F. Supp. 3d 468 (W.D. Va. 2019) ...........................................................14

*Einhorn v. LaChance*,
    823 S.W.2d 405 (Tex. App. – Houston [1st Dist.] 1992), *writ dismissed w.o.j.*
    (June 3, 1992)................................................................................29

*El Paso Times, Inc. v. Kerr*,
    706 S.W.2d 797 (Tex. App. – El Paso 1986), *writ refused NRE* (July 16, 1986)...................25

*Geller v. de Blasio*,
    No. 20CV3566 (DLC), 2020 WL 2520711 (S.D.N.Y. May 18, 2020), *appeal*
    *withdrawn*, No. 20-1592, 2020 WL 4760303 (2d Cir. June 8, 2020).....................................17

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ....................................................................7

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)....................................................................19

*Hartman v. Walker*,
    685 F. App'x 366 (5th Cir. 2017) .................................................................8

*Harvest House Publishers v. Loc. Church*,
    190 S.W.3d 204 (Tex. App. – Houston [1st Dist.] 2006, pet. denied Feb. 16,
    2007) ..................................................................................23

*Hearst Corp. v. Skeen*,
    159 S.W.3d 633 (Tex. 2005)...............................................................28, 30

*Huckabee v. Time Warner Entm't. Co.*,
    19 S.W.3d 413 (Tex. 2000)....................................................................26

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)...........................................................................................9, 22

*Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*,
    No. CIV.A. H-04-2322, 2004 WL 3331843 (S.D. Tex. Nov. 15, 2004) ....................................7

*Johnson v. Phillips*,
    526 S.W.3d 529 (Tex. App. - Houston [1st Dist.] 2017 – pet. denied) ............................19, 20

*Jones v. Compass Bancshares Inc.*,
    339 F. App'x 410 (5th Cir. 2009) ..........................................................................................19

*Kaufman v. Islamic Soc. of Arlington*,
    291 S.W.3d 130 (Tex. App.—Fort Worth 2009, pet. denied) .................................................22

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
    453 B.R. 645 (N.D. Tex. 2011)..........................................................................................7, 11

*KBMT Operating Co., LLC v. Toledo*,
    492 S.W.3d 710 (Tex. 2016)...........................................................................................10, 17

*Klentzman v. Brady*,
    312 S.W.3d 886 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ..........................................27

*Lauderback v. Am. Broadcasting Co.*,
    741 F.2d 193 (8th Cir. 1984) .................................................................................................20

*Lone Star Fund V (U.S,) L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ...................................................................................................7

*Main v. Royall*,
    348 S.W.3d 381 (Tex. App.—Dallas, 2011, no pet.)............................................................22

*Martinez v. Reno*,
    No. 3:97-CV-0813-P, 1997 WL 786250 (N.D. Tex. Dec. 15, 1997) ..................................8, 11

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)...............................................................................................................12

*Matherne v. Wilson*,
    851 F.2d 752 (5th Cir. 1988) .................................................................................................27

*McIlvain v. Jacobs*,
    794 S.W.2d 14 (Tex. 1990).....................................................................................................12

*McLaughlin v. Sullivan County Board of Education*,
    No. 220CV00243DCLCCRW, 2021 WL 3744803 (E.D. Tenn. Aug. 24, 2021)....................17

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974)...........................................................................26

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)...............................................................................19

*Mohamed v. Ctr. for Sec. Policy*,
554 S.W.3d 767 (Tex. App.—Dallas 2018, pet. denied)...........................26, 27, 28

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)...........................................................................23, 28

*Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*,
No. 3:19-CV-2074-G, 2021 WL 3618113 (N.D. Tex. Aug. 16, 2021) ....................8

*New Times, Inc. v. Isaacks*,
146 S.W.3d 144 (Tex. 2004)...................................................................28

*Newspapers, Inc. v. Matthews*,
339 S.W.2d 890 (Tex. 1960)...................................................................22

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999) .......................................................21

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
720 F.3d 490 (2d Cir. 2013)...............................................................2, 14

*Palin v. New York Times Co.*,
264 F. Supp. 3d 527 (S.D.N.Y. 2017), *rev'd on other rounds,* 940 F.3d 804
(2d Cir. 2019)................................................................................28, 30

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) .................................................................21

*Perks v. Town of Huntington*,
251 F. Supp. 2d 1143 (E.D.N.Y. 2003) .....................................................27

*Phantom Touring, Inc. v. Affiliated Pubs.*,
953 F.2d 724 (1st Cir. 1992)..................................................................19

*Press-Ent. Co. v. Super. Ct. of Calif. For Riverside Cty.*,
478 U.S. 1 (1986)...............................................................................26

*Resolute Forest Products, Inc. v. Greenpeace Int'l*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017) .....................................................14

*Robinson v. Radio One, Inc.*,
695 F. Supp. 2d 425 (N.D. Tex. 2010) .......................................................7

*Scott v. Harris*,
　550 U.S. 372 (2007)...........................................................................................8

*Secord v. Cockburn*,
　747 F. Supp. 779 (D.D.C. 1990) ....................................................................30

*Shaunfield v. Experian Inf. Sols., Inc.*,
　991 F. Supp. 2d 786 (N.D. Tex. 2014) .....................................................28, 30

*Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back
　Certificates WAMU Series No. 2007-HE2 Tr.*,
　390 F. Supp. 3d 769 (E.D. Tex. 2019)...............................................................8

*Smith v. Wells Fargo Bank, N.A.*,
　No. 3:12-CV-4633-K-BN, 2013 WL 3324195 (N.D. Tex. June 28, 2013)...............8

*St. Amant v. Thompson*,
　390 U.S. 727 (1968).....................................................................................28, 29

*Summers v. PennyMac Corp.*,
　No. 3:12-CV-01235-L, 2012 WL 5944943 (N.D. Tex. Nov. 28, 2012)...................8

*Tannerite Sports, LLC v. NBCUniversal New Gp.*,
　864 F.3d 236 (2d Cir. 2017)..............................................................................10

*Teel v. Deloitte & Touche LLP*,
　No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015)...................19

*Tomlinson v. McComas*,
　No. 02-11-00175-CV, 2011 WL 5607604 (Tex. App. – Fort Worth Nov. 17,
　2011) ..............................................................................................................20

*Tu Nguyen v. Duy Tu Hoang*,
　318 F. Supp. 3d 983 (S.D. Tex. 2018) ............................................................9, 11

*Turner v. KTRK Television, Inc.*,
　38 S.W.3d 103 (Tex. 2000).......................................................................12, 19, 29

*Underwager v. Salter*,
　22 F.3d 730 (7th Cir. 1994) .............................................................................14

*Vecchio v. Jones*,
　No. 01-12-00442-CV, 2013 WL 3467195 (Tex. App. – Houston [1st Dist.]
　July 9, 2013, no pet.)...................................................................................19, 20

*Vice v. Kasprzak*,
　318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ..........................22

*Wabakken v. Calif. Dept. of Corrections and Rehab.,*
   CV 12-1503-GW, 2016 WL 8943297 (C.D. Cal. June 20, 2016) ............................................27

*Walker v. Beaumont Indep. Sch. Dist.,*
   No. 1:15-CV-379, 2016 WL 1156852 (E.D. Tex. Mar. 24, 2016) .......................................17

*Walker v. Beaumont Indep. Sch. Dist.,*
   No. 1:15-cv-379, 2016 WL 6666828 (E.D. Tex. Mar. 11, 2016) .......................................27

*Washington League for Increased Transparency & Ethics v. Fox News*,
   No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ................................4, 17

*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998) .............................................................................................9

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann.
   § 73.002(b)(2) .............................................................................................................17

Tex. Civ. Prac. & Rem. Code Ann.
   § 73.002(a) ...................................................................................................................17

Tex. Civ. Prac. & Rem. Code Ann.
   § 73.057(a)(1) ................................................................................................................6

**Other Authorities**

Alexandre B. Cavalcanti, M.D., Ph.D et al., *Hydroxychloroquine with or without
   Azithromycin in Mild-to-Moderate Covid-19*, New England Journal of
   Medicine (July 23, 2020) ...........................................................................10, 16, 21

*Chloroquine or Hydroxychloroquine and/or Azithromycin*, National Institutes of
   Health: COVID-19 Treatment Guidelines (last updated July 8, 2021) ...............10, 16, 18

Dr. Immanuel, "New Supplements" (last visited Dec. 14, 2021) ..................................20

*FDA cautions against use of hydroxychloroquine or chloroquine for COVID-19
   outside of the hospital setting or a clinical trial due to risk of heart rhythm
   problems*, Food & Drug Administration (updated July 2, 2020).......................10, 21

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 7

RECOVERY Collaborative Group, *Effect of Hydroxychloroquine in Hospitalized
   Patients with Covid-19*, New England Journal of Medicine (October 8, 2020)...................21

Texas Const. Article I, § 8 ...........................................................................................19

U.S. Const., amend. I. ....................................................................................... *passim*

Defendant Cable News Network, Inc. ("CNN") moves to dismiss Plaintiff Dr. Stella Immanuel's ("Dr. Immanuel") claims for failure to state a claim under Rule 12(b)(6)[1], as follows:

## I.      INTRODUCTION

This Court should dismiss this meritless defamation case because Plaintiff has not plausibly alleged that the alleged defamatory statements are false statements of fact.  On the contrary, Plaintiff Dr. Stella Immanuel herself made the statements quoted in CNN's reporting, and to the extent CNN analyzed or commented on these statements, that commentary is protected as fair comment and/or as opinion on a matter of overwhelming public importance.

In the summer of 2020, President Trump promoted statements made by Dr. Immanuel and other doctors on the steps of the Supreme Court advocating for the use of hydroxychloroquine ("HCQ"), a drug that the Food and Drug Administration had recently deemed not safe enough to use, even on an emergency basis, for the treatment of COVID-19.  CNN's reporting focused squarely – and indisputably accurately – on claims Dr. Immanuel made during that press conference, and on statements she made in her sermons, including the startling assertion that biblical demons are the cause of fibroids, cysts, and other serious gynecological problems.  And all of CNN's commentary on Dr. Immanuel or Trump's reliance on her advice was explicitly

---

[1] In a concurrently filed motion, CNN also moves for dismissal for improper venue under Rule 12(b)(3), or, in the alternative, for transfer.  Rule 12(b)(6) motions do not need to be consolidated with other Rule 12 motions.  *See Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) ("Rule 12(g) did not require consolidation … because Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted."); *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees,* 855 F.3d 681, 686 (5th Cir. 2017) (same) (citing *Belo Corp.*, 512 F.3d, 139-141); 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1361 (3d ed.) (Rule 12(b)(6) motions "are exempted by Rule 12(g) from the consolidation requirement and are protected against waiver by Rules 12(h)(2) and 12(h)(3)"); *accord Charboneau v. Box,* No. 4:13-CV-678, 2017 WL 1159765, at *14 (E.D. Tex. Mar. 29, 2017) (Mazzant, J.) ("Rule 12(h)(2) expressly permits filing of a motion to dismiss on the basis of failure to state a claim as late as trial, particularly where the defendant already has filed an answer or other responsive pleading."); *Iturralde v. Shaw Grp., Inc.,* No. CIV.A. 05-330, 2012 WL 1565356, at *2 (M.D. La. May 1, 2012), *aff'd,* 512 F. App'x 430 (5th Cir. 2013) ("Rule 12(h) expressly preserves Rule 12(b)(6) motions from Rule 12's waiver mechanism, and thus, a defendant may bring a motion to dismiss based on plaintiff's failure to state a claim even after filing a responsive pleading.")

predicated on numerous scientific studies, government reports, and on videos Dr. Immanuel herself published, all of which were referenced in CNN's reports.  Nonetheless, Dr. Immanuel brings this claim for defamation and defamation by implication.  This Court should dismiss Dr. Immanuel's claims because Dr. Immanuel has not plausibly alleged the requisite elements of her claim.

  ***First***, every fact in the CNN Reports at issue is substantially, if not literally, true. Dr. Immanuel really – and indisputably – said exactly what CNN says she did.  ***Second***, the truth of scientific claims about HCQ is a matter for public discussion, and is not an appropriate inquiry for this or any other court deciding a defamation action.  ***Third***, CNN's statements that dispute the effectiveness of hydroxychloroquine or question the credibility of a doctor promoting it are plainly non-actionable as fair comment on a matter of profound public concern.  ***Fourth***, to the extent Dr. Immanuel complains of CNN's expressions of opinion, such statements are either based on fully disclosed facts or are rhetorical hyperbole, and are absolutely privileged.  ***Fifth***, Dr. Immanuel failed to plead that several statements are "of and concerning" her, because they explicitly concern other individuals (such as Trump) or do not concern an identifiable person at all (in the case of statements about HCQ). ***Finally***, Dr. Immanuel, a limited purpose public figure, did not plead that CNN acted with actual malice in publishing the articles or telecasts, precluding liability for CNN on both her claims.

  At bottom, Dr. Immanuel is asking this Court to resolve the public debate on the use of HCQ to treat the pandemic that has ravaged our country for 20 months and to do so in a way that awards her, personally, $100,000,000. But it is not the proper role of this or any court to determine the truth or falsity of medical or scientific claims, and it is certainly not the role to declare one doctor a "winner" entitled to windfall personal damages. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013) ("as a matter of law, statements of scientific conclusions

about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation."). This defamation case simply does not belong in this or any other court and this Court should dismiss it with prejudice.

## II.   STATEMENT OF ISSUES PURSUANT TO LOCAL CIVIL RULE 7(A)(1)

In ruling on CNN's Motion to Dismiss, the Court is presented with the following issues:

1. Under Texas law, defamation requires the publication of a false statement of fact to a third party that was defamatory concerning the plaintiff. Is Dr. Immanuel's defamation claim viable when (1) all Challenged Statements that concern Dr. Immanuel's are substantially true; (2) the truth of any scientific claim contain in the Challenged Statements cannot be decided by the Court; (3) CNN's reporting on the effectiveness of HCQ and on Dr. Immanuel's promotion of the drug is privileged as fair comment under Texas law and the First Amendment; (4) many of the Challenged Statements are privilege as either rhetorical hyperbole or expressions of opinion based on disclosed facts; and (5) several Challenged Statements criticize HCQ, not Dr. Immanuel herself?

2. Under Texas law, defamation by implication permits recovery where the juxtaposition of statements creates a false and defamatory implication, or where the inclusion of omitted facts would materially alter the effect on the reader or viewer. Is Dr. Immanuel's defamation by implication viable when (1) several Challenged Statements are substantially true; (2) the asserted implications are protected expressions of opinion; and (3) no alleged omission could have materially affected the reader or viewer's understanding the Challenged Statements?

3. Under Texas law, all forms of defamation require a defendant to have acted with actual malice where the plaintiff is a public figure. Are Dr. Immanuel's claims viable when (1) Dr. Immanuel is a limited-purpose public figure; and (2) she fails to allege facts supporting actual malice?

## III.   STATEMENT OF FACTS

### 1.   The Parties

Dr. Immanuel is a licensed primary care physician who practices in Houston, Texas and Louisiana. Compl. ¶ 1. She is also the leader of Fire Power Ministries, a "Deliverance Ministry" focused on "healing and spiritual Warfare and prayer." Compl. ¶ 9; Declaration of Kate Bolger ("Bolger Decl.") Ex. A-7. In her sermons, Dr. Immanuel (referring to herself as "Dr. Stella") often attributes medical conditions – such as pregnancies, miscarriages, fibroids, and endometriosis – to

phenomena described in various Biblical passages, such as evil spirits called Nephilim that Dr. Immanuel asserts are referenced in Genesis 6. *See* Bolger Decl. Ex. A-1 at 2:34-2:50, 6:10-6:20; *id.* Ex. A-2 at 3:16-21, 6:5-23; Compl. ¶ 9. She has also stated that "they've found the gene in somebody's mind that makes you religious, so they can vaccinate against it."  Bolger Decl. Ex. A-3 at 4:30-4:35; Ex. A-4 at 2:13-15.  And she has stated that "medical sciences … use all kind of DNA, even alien DNA, to treat people." Bolger Decl. Ex. A-5 at 43:55-43:58; Ex. A-6 at 2:23-24. Videos of Dr. Immanuel's sermons are posted to the Firepower Ministry YouTube page. Compl. ¶ 9 (providing URL).

CNN owns and operates numerous news platforms and services, including the television network known as CNN and the website www.cnn.com.

### 2.      COVID-19

In early 2020, the highly infectious disease COVID-19 began spreading rapidly throughout the United States, killing hundreds of thousands and forcing the closure of businesses and schools and the suspension of court proceedings. *See Washington League for Increased Transparency & Ethics v. Fox News*, No. 81512-1-I, 2021 WL 3910574, at *1 (Wash. Ct. App. Aug. 30, 2021). The local, state, and federal government responses to the resulting pandemic became the subject of extensive public debate, with particular focus being directed at potential treatments and prophylactic measures.  *Id.*

### 3.      Dr. Immanuel's And Trump's Promotion Of Hydroxychloroquine

On July 27, 2020, Trump retweeted a video of a press conference at which Dr. Immanuel and other members of a group called "America's Frontline Doctors" advocated for HCQ as an effective treatment for COVID-19 from the steps of the United States Supreme Court.  Compl. ¶ 3, 4. During her remarks, Dr. Immanuel described her alleged success with HCQ and explained

that she decided to use HCQ because hiccups are a symptom of COVID-19 and a study showed HCQ to be an effective treatment for hiccups. Compl. ¶ 3. And she railed against "fake doctors" asserting that "double blinded" studies were needed to prove HCQ's effectiveness, claiming that they sounded like "computers [whose] chips are malfunctioning, [while] I'm a real doctor." *Id.* Trump subsequently called Dr. Immanuel "very impressive" and her voice "important." Compl. ¶ 4.

As alleged in the Complaint, Dr. Immanuel used HCQ to prevent and treat COVID-19 infections in her patients. Dr. Immanuel alleges that, by July 2020, she had personally treated over 350 patients with a combination of HCQ, zinc, and Zithromax, with "excellent" results, losing only one patient. Compl. ¶ 2 and n.1. Dr. Immanuel asserts that neither she nor her staff contracted COVID-19 after taking HCQ. Compl. ¶ 2 n.1.

### 4.    CNN Opines On Dr. Immanuel and HCQ

Following Trump's retweet, several CNN commentators discussed and made critical statements about Trump's promotion of Dr. Immanuel, citing several science-related assertions Dr. Immanuel made as part of her Fire Power sermons. Those statements, which Plaintiff claims are defamatory of her, are reproduced in the attached Appendix, and were in the following articles, telecasts, and promotional materials (the "Challenged Statements"):

- On July 28, 2020, CNN aired an interview with a CNN reporter who had asked Trump about his retweet of Dr. Immanuel's remarks (the "Blitzer Report").

- On July 28 and July 29, 2020, CNN aired two segments of the program Anderson Cooper 360° focused on Trump's promotion of Dr. Immanuel, HCQ, and Dr. Immanuel's sermons (the "First Cooper Report" and the "Second Cooper Report"). The landing page for the First Cooper Report (the "Landing Page") and two tweets promoting the First Cooper

Report (the "Promotional Tweets") also contained statements concerning Trump, Dr. Immanuel and HCQ.

- On July 28, 2020 CNN published an article by Jon Passantino and Oliver Darcy that discusses the Supreme Court press conference held by Dr. Immanuel, and the removal of the resulting video from various social media platforms (the "Passantino Article").

- On July 29, 2020, CNN published an article by Veronica Stracqualursi that discusses the Trump's press conference and Dr. Immanuel's sermons and medical beliefs (the "Stracqualursi Article").

- On July 29, 2020, CNN published an article by Kevin Liptak that discussed a meeting between former Vice Present Pence and the group of doctors with whom Dr. Immanuel appeared on the Supreme Court steps (the "Liptak Article").

*See* Compl. ¶¶ 5, 9; Bolger Decl. Exs. A-8-A-16.[2]

**5.     Dr. Immanuel Files The Instant Complaint**

On July 1, 2021, counsel for Dr. Immanuel wrote to CNN requesting a retraction of the allegedly defamatory publications. Bolger Decl. Ex. A-17. Without waiting the statutory 30 days for CNN to respond, Dr. Immanuel then filed the instant Complaint.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.057(a)(1); Dkt. # 1.  In the Complaint, Dr. Immanuel asserted causes of action for defamation and defamation by implication. She alleged that the Challenged Statements are materially false because: (1) she did not promote conspiracy theories or "snake oil" treatments, principally because HCQ – the drug she was advocating for – is an effective treatment for COVID-19; (2) CNN attributed to Dr. Immanuel statements about demons and aliens that she never made;

---

[2] The language quoted herein and in Appendix A is the actual language used in the CNN articles and telecasts. In her Complaint, Dr. Immanuel paraphrases, extrapolates, or omits the language used by CNN or herself, but the attached exhibits provide the Court with both the actual language and the context.

and (3) the juxtaposition of statements she made during her sermons, along with the omission of

facts about the spiritual underpinnings of her sermons, created the allegedly false "impression that

she was unfit to perform the duties of a licensed medical doctor." Compl. ¶¶ 6, 9, 29.

### IV.     LEGAL STANDARD

"To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its

face.'" *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 426 (N.D. Tex. 2010) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the Court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the plaintiff's allegations "do not permit the Court

to infer more than the mere possibility of misconduct," then she fails to meet her burden and the

complaint should be dismissed. *Id.* In assessing the plausibility of a plaintiff's complaint, the Court

may consider "the complaint, any documents attached to the complaint, and any documents

attached to the motion to dismiss that are central to the claim and referenced in the complaint."

*Lone Star Fund V (U.S,) L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010) (citing

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (these materials

"assist the court in making the elementary determination of whether a claim has been stated."));

*see Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011) ("Documents are

central when they are necessary to establish an element of one of the plaintiff's claims."); *Internet*

*Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. CIV.A. H-04-2322, 2004 WL 3331843,

at *3 (S.D. Tex. Nov. 15, 2004) (considering documents attached to defendant's motion to dismiss

where plaintiff repeatedly referred to the court proceedings to which they related).

In addition, courts are not required to accept as true a plaintiff's allegations that are

contradicted by documents that are attached to a plaintiff's complaint or which are central to her claims. *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) ("Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits [or central] to the complaint, the court may properly disregard the allegations.") (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 792 (E.D. Tex. 2019) (claim dismissed where plaintiff's factual allegations were contradicted by a sworn affidavit that was central to plaintiff's claims and was included as an exhibit to defendant's motion to dismiss).[3]

In particular, on 12(b)(6) motions to dismiss defamation claims, courts may consider the alleged defamatory publications for which a plaintiff seeks to recover. *See Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *7 n.6 (N.D. Tex. Aug. 16, 2021) (letter containing allegedly defamatory statements was central to plaintiff's claims and part of the pleadings even where it was not attached to the complaint); *Busch v. Viacom Int.*, 477 F. Supp. 2d 764, 775 n.6 (N.D. Tex. 2007) (considering broadcast attached as an exhibit to defendant's motion to dismiss because it is the basis for plaintiff's defamation claim). Here, that means that the Court, in deciding this motion, can properly consider copies of the articles and telecasts in which the Challenged Statements appeared, as well as videos of Dr. Immanuel's sermons that are repeatedly referenced (and linked to) in her Complaint.  Compl. ¶¶ 9, 29.

---

[3] *See also Summers v. PennyMac Corp.*, No. 3:12-CV-01235-L, 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (claim dismissed where plaintiffs' factual allegations were contradicted by document, attached to defendant's motion to dismiss, that was central to plaintiffs' claim); *Smith v. Wells Fargo Bank, N.A.*, No. 3:12-CV-4633-K-BN, 2013 WL 3324195, at *4 (N.D. Tex. June 28, 2013) (holding that "documents central to [p]laintiffs' Amended Complaint [and attached to defendant's motion] contradict [p]laintiffs' allegations" and granting motion to dismiss "to the extent any of their causes of action rely on these unsupported allegations"); *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) ("the court is not required to favor plaintiff's allegations over the video evidence" attached to the complaint).  *Accord Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (dismissing on summary judgment when the complaint's facts were "utterly discredited" by video evidence).

## V.  ARGUMENT

Dr. Immanuel alleges two causes of action, for defamation and defamation by implication. As discussed below, she has failed to state a plausible claim for relief for either, and her claims should be dismissed. Dr. Immanuel herself made the very statements quoted by CNN, and to the extent CNN analyzed or commented on these statements, that commentary is protected as fair comment and/or as opinion on a matter of unquestioned public importance.

### 1.  Dr. Immanuel Failed To State A Plausible Defamation Claim

First, Dr. Immanuel has failed to plausibly allege a defamation claim. In Texas, "the defamation action has been narrowly tailored to limit free speech as little as possible." *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992). "To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was … a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  Here, Dr. Immanuel cannot make out the elements of her claim.

### A.  All The Challenged Statements Regarding Dr. Immanuel's Sermons Or Views On HCQ Are Substantially True

*First,* Dr. Immanuel has not and cannot plausibly allege that the Challenged Statements are materially false, because the Complaint and the documents referenced therein establish that the Challenged Statements are true. It is axiomatic that a statement must be *false* to be actionable as defamation. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *see Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1006 (S.D. Tex. 2018) (Texas requires the "publication of a false statement of fact"). Where, as here, the claim involves matters of public concern, falsity is an element that a defamation plaintiff must plead and prove against a media defendant. *See Corsi v. Infowars, LLC*,

No. A-20-CV-298-LY, 2021 WL 2115272, at *4 (W.D. Tex. May 25, 2021), *report and recommendation adopted*, No. 1:20-CV-298-LY, 2021 WL 4955914 (W.D. Tex. June 25, 2021) ("a plaintiff seeking to state a defamation claim must plead the … publication of a false statement of fact"); *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 713-14 (Tex. 2016) ("[T]he United States Supreme Court and this Court long ago shifted the burden of proving the truth defense to require the plaintiff to prove the defamatory statements were false when the statements were made by a media defendant over a public concern."); *Tannerite Sports, LLC v. NBCUniversal New Gp.,* 864 F.3d 236, 244-45 (2d Cir. 2017) (collecting cases). Here, Dr. Immanuel has not plausibly pleaded that CNN inaccurately quoted any of her statements made about HCQ or in the sermons she distributed on YouTube. Indeed, she cannot – because Dr. Immanuel uttered each and every statement CNN attributed to her.

Dr. Immanuel does not dispute (because she cannot) the truth of the main facts of the Challenged Statements – that is, that Plaintiff appeared on the steps of the Supreme Court to talk about using HCQ as a treatment for COVID-19, and that her appearance was promoted by the President.  She also indisputably believes HCQ prevents, and is a "cure" for, COVID-19.  Compl. ¶ 3.  There is no dispute then, that any statements that quote or paraphrase Dr. Immanuel's stance on HCQ are substantially true.  Nor can there be any dispute that CNN's description of government guidance on HCQ, or of studies showing the drug to be ineffective at combatting COVID-19, were anything less than entirely accurate. *See infra*, Section V.1.C.[4]

---

[4] *See, e.g., FDA cautions against use of hydroxychloroquine or chloroquine for COVID-19 outside of the hospital setting or a clinical trial due to risk of heart rhythm problems*, Food & Drug Administration (updated July 2, 2020), available at https://www.fda.gov/drugs/drug-safety-and-availability/fda-cautions-against-use-hydroxychloroquine-or-chloroquine-covid-19-outside-hospital-setting-or (last visited Dec. 9, 2021); *Chloroquine or Hydroxychloroquine and/or Azithromycin*, National Institutes of Health: COVID-19 Treatment Guidelines (last updated July 8, 2021), available at https://www.covid19treatmentguidelines.nih.gov/therapies/antiviral-therapy/chloroquine-or-hydroxychloroquine-and-or-azithromyci (last visited Dec. 9, 2021); Alexandre B. Cavalcanti, M.D., Ph.D et al., *Hydroxychloroquine with or without Azithromycin in Mild-to-Moderate Covid-19*, New England Journal of Medicine (July 23, 2020) https://www.nejm.org/doi/full/10.1056/nejmoa2019014, (last visited Dec. 9, 2021).

Nor can there be a reasonable dispute as to the truth of the other statements CNN attributes to Dr. Immanuel.   Dr. Immanuel alleges that CNN "falsely attribute[ed] statements to Dr. Immanuel that she never made, such as 'Alien DNA was used in medical treatments' and 'demon sperm.'" Compl. ¶ 6; *see also* Compl. ¶ 9. But Dr. Immanuel has repeatedly referenced demons and aliens (specifically, alien DNA) in her sermons, as is evident from the clips of her sermons included in several of the CNN telecasts and hyperlinked in the Complaint. *See* Compl. ¶ 9 (providing URL for Dr. Immanuel's YouTube channel, containing videos of her sermons). For instance, in a sermon titled "A Fight For the Soul Of America Is A Fight For The World," Dr. Immanuel claimed that "they use all kind of DNA, even alien DNA, to treat people," directly after stating that "medical sciences have gotten to the fact that there are children being born that are transhuman[s]." Bolger Decl. Ex. A-5 at 43:00-44:02; Ex. A-6 at 2:15-25.   In the same sermon, she also proclaimed that "they are … mixing humans being with demons." *Id.* And in a sermon titled "Deliverance From Spirit Husbands and Spirit Wives (Incubus and Succubus) Part one," Dr. Immanuel discussed ways in which women can get from pregnant from "astral sex. That means [the impregnator] is not really a demon or a Nephilim. It's just a human being that's a witch. And they astral project and sleep with people." Bolger Decl. Ex. A-1 at 14:12-14:26; Ex. A-2 at 12:2-5.   She also described ways in which so-called incubuses and succubuses steal men's sperm and then "turn into a man and … sleep with another woman and deposit the sperm and produce more of themselves." Bolger Decl. Ex A-1 at 9:46-10:13; Ex. A-2 at 8:22-24.   It is implausible therefore to allege that Challenged Statements about Dr. Immanuel's statements are false because they literally quote from Dr. Immanuel's sermons, many of which are referenced in the Complaint. [5]

---

[5] This Court is permitted to consider these statements because they are central to Dr. Immanuel's claims, *Kaye*, 453 B.R. at 662, and because the allegations "are contradicted by facts established by [those] documents," the Court "may properly disregard the allegations." *Martinez*, 1997 WL 786250 at *2.

To the extent that Dr. Immanuel seeks to argue that the Challenged Statements are false because she never uttered the precise phrases "demon sperm" or "Alien DNA was used in medical treatments," her claim must fail. Substantial, not literal, truth defeats a defamation claim. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 516 (1991) (the law "overlooks minor inaccuracies and concentrates on substantial truth"); *see McIlvain v. Jacobs,* 794 S.W.2d 14, 16 (Tex. 1990) (holding that, despite the presence of several minor mischaracterizations, report was substantially true); *Tu Nguyen*, 318 F. Supp. 3d at 1007 ("substantial truth will defeat a plaintiff's defamation claim."). Here, the difference between Dr. Immanuel's actual words – "they're using alien DNA to treat people," spoken while discussing medical science – and CNN's claim that Dr. Immanuel said "Alien DNA was used in medical treatments" is vanishingly small. Similarly, though Dr. Immanuel may not have uttered the precise phrase "demon sperm," she did discuss – at length – how demons steal the sperm of men in order to reproduce themselves. Bolger Decl. Ex A-1 at 9:46-10:13; Ex. A-2 at 8:22-24.  Because it is substantially true that Dr. Immanuel discussed demon sperm and medical treatments involving alien DNA, the Challenged Statements are not actionable.

Further, to the extent Dr. Immanuel alleges that the Challenged Statements are false because, contrary to what CNN allegedly said, Dr. Immanuel's statements "had nothing to do with her medical practice, credentials and opinions," this allegation is also unavailing.[6]  Compl. ¶ 29. As is clear from even a cursory review of the sermons from which CNN quoted, it is substantially true that the many statements CNN quoted or paraphrased plainly **do** express medical opinions, including on pregnancy, sexual intercourse, vaccines, and the biological underpinnings of the

---

[6] Dr. Immanuel makes this allegation as part of her defamation by implication claim, but to aid the Court's consideration of the truth of CNN's characterization of her statements – and because truth is a defense to defamation by implication claims, *see Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) – CNN discusses the relevant statements here.

belief in the divine. For example, CNN said that Dr. Immanuel has claimed that "sex with 'tormenting spirits' is responsible for gynecological problems, miscarriages and impotence." Bolger Decl. Ex A-14; *see* Challenged Statement 3. And, in fact, Dr. Immanuel states that, in some cases, what doctors "call … fibroids [or] … endometriosis" are actually "evil, spiritual pregnancies" caused by sex with incubi and succubi (*i.e.*, demons).  Bolger Decl. Ex. A-1 at 2:38-2:50; Ex. A-2 at 8:10-20 (stating further that "we call them endometriosis; we call them fibroids. We call them cyst, but most of them are evil deposits from the spirit husband.").  CNN said that Dr. Immanuel has claimed that "they're trying to create a vaccine to make you immune from becoming religious." Bolger Decl. Ex. A-14; *see* Challenged Statement 3. And, in fact, Dr. Immanuel has stated that scientists have "found the gene in somebody's mind that makes you religious, so they can vaccinate against it," as part of larger plan by "the enemy" to bring about "the new world order" using "android stuff," including the implantation of chips in people.  Bolger Decl. Ex. A-3 at 4:07-4:35; Ex. A-4 at 2:6-10.  CNN stated that Dr. Immanuel claimed that "Alien DNA was used in medical treatments." Bolger Decl. Exs. A-14, A-10, A-16; *see* Challenged Statements 3, 7-8.  And, in fact, Dr. Immanuel has stated that "medical science[]" has created "transhumans," via the use of alien DNA. Bolger Decl. Ex. A-5 at 43:30-43:58; Ex. A-6 at 2:15-19.  In short, it is substantially true that all of Dr. Immanuel's statements that CNN quoted or paraphrased espouse clear, unmistakable *medical* opinions about biological and physiological phenomena, and it is implausible for Dr. Immanuel to plead otherwise.  All of the facts contained in the Challenged Statements are, therefore, substantially true and Dr. Immanuel cannot plausibly plead material falsity.

### B.    This Court Cannot Decide Scientific Truth In a Defamation Action

The crux of Dr. Immanuel's claims is not that the facts contained in the Challenged Statements are wrong, but that she is somehow defamed because CNN does not believe HCQ is

an effective, viable treatment for COVID-19. Even assuming any of the Challenged Statements that attack the efficacy of HCQ are defamatory of *Dr. Immanuel* – and they are not, *see infra*, Section V.1.E – those statements "lack[] the provably false content that is required to support a defamation action." *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010). Put simply, "as a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY*, 720 F.3d at 492. As a result, courts across the country have dismissed lawsuits, even at the 12(b)(6) stage, that are predicated on publications that discuss, or dispute, scientific findings.[7] As one court put it "determining the falsity of [the defendant's position] would mire the court in a scientific debate of the sort courts are loathe to resolve in defamation actions," *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 528 (W.D. Va. 2019). Indeed, early dismissal of such suits is especially appropriate because such "publications … indisputably involve[] … matter[s] of substantial public concern – [including, *e.g.*], the safety of vaccines and the risks and benefits of childhood immunization protocols," and therefore "the constitutional and common law protections … are at their zenith." *Arthur*, 2010 WL 883745 at *4.

This case is just like *Arthur*. There, the plaintiff sued Wired Magazine (even before COVID-19 ignited a national debate over vaccines) over an article that portrayed her "as the anti-vaccine 'movement's brain' and described her organization as 'the largest, oldest, and most influential of the watchdog groups that oppose universal vaccination.'" *Id.* at *2. The plaintiff argued, as Dr. Immanuel argues here, that Wired suggested that her scientific conclusions were

---

[7] *See, e.g., Resolute Forest Products, Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017) ("[t]he academy, and not the courthouse, is the appropriate place to resolve scientific disagreements"; dismissing defamation claims); *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation"). *Cf. Croce v. New York Times Co.*, 930 F.3d 787, 798 (6th Cir. 2019) (newspaper's accurate reporting on deficiencies in plaintiff's research and laboratory techniques was not actionable defamation).

not credible. *Id.* at *6. The court dismissed the lawsuit on a 12(b)(6) motion, holding that a statement accusing the plaintiff of lying about the effectiveness of vaccines "lacks the provably false content that is required to support a defamation action." *Id.* at *3, 6. As the court explained, the plaintiff's theory of liability would "ensnare the Court in the thorny and extremely contentious debate over the perceived risks of certain vaccines, their theoretical association with particular diseases or syndromes, and, at bottom, which side of this debate has 'truth' on their side. That is hardly the sort of issue that would be subject to verification based upon a core of objective evidence." *Id.* at * 6 (emphasis added) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). The court concluded:

> Plaintiff may wish to defend in Court the credibility of her conclusions about the dangers of vaccines, the validity of the evidence she offers in support of those theories, and the policy choices that flow from those views—as well as her own credibility for having advanced those positions. These, however, are academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action.

*Id.*

Here, as in *Arthur*, the Challenged Statements are not the sort of thing that courts or juries resolve in the context of a defamation action. The Challenged Statements are about treatment for a disease that (as of the date of this Motion) has killed more than 800,000 Americans and 5,300,000 people worldwide.[8] Disputes over the effectiveness and necessity of COVID-19 treatments (from hydroxychloroquine and masks to ivermectin and monoclonal antibodies) are arguably as contentious and heated as any scientific debate previously known in this country. Yet Dr. Immanuel now invites this Court to definitively rule that her thoughts on HCQ are correct – even

---

[8] *See Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last visited December 17, 2021); *Coronavirus World Map: Tracking the Global Outbreak*, N.Y. Times, https://www.nytimes.com/interactive/2021/world/covid-cases.html (last visited December 17, 2021) (last visited December 17, 2021).

though there is plainly no indisputable, objective evidence that can guide such a finding. Dr. Immanuel bases her claims about HCQ on certain studies allegedly showing HCQ to be effective, *see* Compl. ¶ 7; CNN bases its claims about HCQ on numerous other studies showing the exact opposite. *See infra*, Section V.1.C.  While CNN firmly believes the studies it relied on were correct because they involved randomized, controlled trials, and because numerous federal agencies based their guidance on those same studies,[9] which party's scientific evidence is more reliable is ultimately a question for science, not for the courts.  Indeed, were CNN to be held liable for statements regarding HCQ, then so too could any scientist who publicly calls into question a scientific or medical finding.  No one should wish to see "the prospect of defamation liability stifle academic debate and trench upon First Amendment values." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014). This Court should reject Dr. Immanuel's invitation to do so, and dismiss her claims as to the extent the Challenged Statements challenge the efficacy of HCQ or Dr. Immanuel's dismissal of the need for the public to wear masks.

### C.     Many Of The Challenged Statements Are Privileged As Fair Comment

For similar reasons, Dr. Immanuel's efforts to recover based on claims made by CNN should be rejected, since CNN's statements were fair comment on a matter of public concern.  Both the United States and Texas Supreme Courts have long recognized the "special protected nature" of news organizations reporting and opining on public information and matters of public concern. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975); *see KMBT*, 492 S.W.3d at 713-715 (collecting authority).  And, in fact, Texas has enshrined a fair comment privilege in its common

---

[9] *See, e.g.,* Cavalcanti, *supra* at n. 4 ("We conducted a multicenter, randomized, open-label, three-group, controlled trial involving hospitalized patients with suspected or confirmed Covid-19 who were receiving either no supplemental oxygen or a maximum of 4 liters per minute of supplemental oxygen. Patients were randomly assigned in a 1:1:1 ratio to receive standard care, standard care plus hydroxychloroquine at a dose of 400 mg twice daily, or standard care plus hydroxychloroquine at a dose of 400 mg twice daily plus azithromycin at a dose of 500 mg once daily for 7 days."); *Chloroquine or Hydroxychloroquine and/or Azithromycin*, *supra* at n. 4 (citing same).

and statutory law.  The Texas common law fair comment privilege "afford[s] legal immunity for the honest expression of opinion on matters of legitimate public interest." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002).  Texas codified that privilege in Texas Civil Practices and Remedies Code § 73.002(b)(2)[10] – which protects both opinion and fact – and under which "reasonable and fair comment on or criticism of a . . . matter of public concern published for general information" is "privileged and cannot form the basis of a libel action." *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 644–45 (Tex. App.—Forth Worth 1998, no pet.).

This case fits squarely within the privilege. As an initial matter, the Challenged Statements all concern the reliability of a doctor, endorsed by a United States president, who was promoting a disputed treatment for a virus that, by late July 2020, had killed approximately 150,000 Americans.[11] Compl. ¶¶ 4, 8; *see Geller v. de Blasio*, No. 20CV3566 (DLC), 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020), *appeal withdrawn*, No. 20-1592, 2020 WL 4760303 (2d Cir. June 8, 2020) (classifying the COVID-19 pandemic as a matter of public concern); *McLaughlin v. Sullivan County Board of Education*, No. 220CV00243DCLCCRW, 2021 WL 3744803, at *3 (E.D. Tenn. Aug. 24, 2021) ("the COVID-19 pandemic … is unquestionably a matter of public concern"); *Washington League for Increased Transparency & Ethics*, 2021 WL 3910574, at *3 (statements regarding the COVID-19 pandemic "implicate matters of public concern and thereby fall squarely within First Amendment protections."). Dr. Immanuel's statements about HCQ, and Trump's promotion of those statements, are indisputably matters of public concern.

CNN's reporting is also both reasonable and fair.  To gauge whether the fair comment

---

[10] The privilege applies to publications by "a newspaper or other periodical," Tex. Civ. Prac. & Rem. Code Ann.§ 73.002(a), which the Texas Supreme Court has interpreted to include broadcasters and online publishers.  *KBMT* 492 S.W.3d at 714 n.21; *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 1156852, at *2 (E.D. Tex. Mar. 24, 2016) (applying privilege to online publications).

[11] Christine Chan and Lisa Shumaker, *U.S. records over 25,000 coronavirus deaths in July*, Reuters (July 31, 2020, 3:03AM), https://www.reuters.com/article/us-health-coronavirus-usa-july/u-s-records-over-25000-coronavirus-deaths-in-july-idUSKCN24W1G1 ("Deaths in July rose 20% to nearly 154,000 total.")

privilege applies, courts determine whether "whether the [commentary] was factually consistent with" the sources upon which the commentary is based. *Brewer*, 986 S.W.2d at 645. Here, the reports fairly characterize Dr. Immanuel's statements, including both those she made on the steps of the Supreme Court and those she made from the pulpit. It is clear from the manner in which CNN's quotations or paraphrases are presented in the reports that those statements are taken from Dr. Immanuel's spiritual sermons; indeed, the First Cooper Report, Second Cooper Report, and Stracqualursi Article all explicitly note that Dr. Immanuel is both a doctor and preacher. *See* Challenged Statements 2-3, 7.  Moreover, as discussed above, CNN's quotes or paraphrases are all literally or substantially true representations of Dr. Immanuel's own statements – including statements that undeniably express medical or scientific opinions. *See supra*, Section V.1.A.  CNN also fairly characterizes the guidance issued or relied on by the federal government about HCQ deficiencies. The First and Second Cooper Reports both note that the Food and Drug Administration revoked its emergency use for HCQ. [12]  Bolger Decl. Exs. A-2, A-10. The Second Cooper Report and the Liptak Article highlight Dr. Anthony Fauci's discussion of several studies showing the ineffectiveness of HCQ. Bolger Decl. Exs. A-10, A-16.  And the First Cooper Report, the Stracqualursi Article, and the Passantino Article all describe, in varying levels of detail, such studies, including one that "showed no benefit and also revealed heart rhythm complications, which can be deadly." [13]  Bolger Decl. Ex. A-2, A-14-A-15. Accordingly, the Challenged Statements fairly comment on HCQ and COVID-19, and Dr. Immanuel cannot, as a matter of law, recover for their publication.

---

[12] The FDA revoked its emergency use authorization on June 15, 2020, and further recommended against the use of hydroxychloroquine outside of clinical trial settings.  *See FDA cautions against use of hydroxychloroquine, supra* at n. 4.

[13] The National Institutes of Health have recommended against the use of hydroxychloroquine with azithromycin for any COVID-19 patient based on studies that showed no benefit from its use and risk of cardiac events or death.  *See Chloroquine or Hydroxychloroquine and/or Azithromycin, supra* at n. 4.

### D.     Most Of The Challenged Statements Are Constitutionally Protected Opinion

This Court should dismiss the Complaint on the additional ground that nearly all of the Challenged Statements contain commentary that constitutes nonactionable opinion as a matter of law.  "To be actionable, a statement must be a factual assertion; expressions of opinion are not actionable." *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015); *see also Johnson v. Phillips*, 526 S.W.3d 529, 535 (Tex. App. - Houston [1st Dist.] 2017 – pet. denied) (opinions "are not defamatory.")  *See Bentley*, 94 S.W.3d. at 579 (unverifiable statements); *Jones v. Compass Bancshares Inc.*, 339 F. App'x 410, 412 (5th Cir. 2009) (statements of opinion).  "All assertions of opinion are protected by the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution."  *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). Where a statement is not capable of being proven true or false – *i.e.,* where there is no "core of objective evidence" upon which a trier of fact can verify a statement's veracity – it is properly classified as opinion.  *Milkovich.*, 497 U.S. at 21; *see also Bentley*, 94 S.W.3d at 579. "Whether a statement is a statement of fact or opinion is a question of law to be decided by the court." *Johnson*, 526 S.W.3d at 535.

The Challenged Statements here constitute two different kinds of opinion.  *First*, liability cannot be imposed because many of the allegedly defamatory statements are "rhetorical hyperbole," words used "in a loose, figurative sense," or "vigorous epithet[s]." *Milkovich,* 497 U.S. at 17; *see Am. Broadcasting Cos., Inc. v. Gill*, 6 S.W.3d 19, 30 (Tex. App.–San Antonio 1999, pet. denied), *disapproved of on other grounds* by *Turner*, 38 S.W.3d 103 (Tex. 2000) (defining "rhetorical hyperbole" as "extravagant exaggeration" "employed for rhetorical effect"); *see*; *Vecchio v. Jones*, No. 01-12-00442-CV, 2013 WL 3467195, at *7 (Tex. App. – Houston [1st Dist.] July 9, 2013, no pet.) (statements alleged that plaintiff brought "reckless" lawsuits based on

"questionable" claims were nonactionable opinion); *Phantom Touring, Inc. v. Affiliated Pubs.*, 953 F.2d 724, 728 (1st Cir. 1992) (holding that phrases such as "rip-off" "fraud" "scandal" "snake-oil job" are figurative and hyperbolic because no objective evidence can be used to disprove them); *Lauderback v. Am. Broadcasting Co.*, 741 F.2d 193, 196 (8th Cir. 1984) (holding that ABC broadcast's reference to insurance agents as "crooks" and "liars," and to their practices as "rotten," "unethical," and "sometimes illegal" merely "indicated ABC's opinion" and thus was non-actionable).[14]   Here, any statement accusing Dr. Immanuel of peddling "conspiracy theories," or "snake oil" – assuming those statements actually concern Dr. Immanuel and not Trump, *see infra*, Section V.1.E, is quintessential rhetorical hyperbole "and is thus nonactionable opinion."[15]

The Challenged Statements are also opinion because they are couched in clearly subjective language and their truthful factual bases are disclosed in the articles and telecasts in which they appear. "Purely subjective assertions or opinions that do not imply the existence of undisclosed facts and do not misconstrue the facts are not actionable as defamation." *Tomlinson v. McComas*, No. 02-11-00175-CV, 2011 WL 5607604, at *4 (Tex. App. – Fort Worth Nov. 17, 2011). This is particularly true where, as here, "the facts underlying an opinion are set out in the publication itself, thereby allowing the listener to evaluate the facts and either accept or reject the opinion." *Brewer*, 986 S.W.2d at 643. Indeed, "the First Amendment protects [a media organization's] analysis, insight, and gloss …, because a reasonable reader is able to make his own judgments about the evidence and would expect [others] to have particular viewpoints." *Johnson*, 526 S.W.3d at 537; *see Vecchio*, 2013 WL 3467195, at *8 (defendant's statement that plaintiff was not "duly

---

[14] *See also Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) (characterizing conspiracy theorists as "misleading the American public" is "obviously a statement of opinion that could not be reasonable seen as stating or implying provable facts").

[15] Regardless of whether the statements are exaggeration, the opinions they express are well-founded, as Dr. Immanuel is currently selling various supplements seemingly meant to treat or prevent COVID-19.  *See* "New Supplements," https://drstellamd.com/new-supplements/ (last visited Dec. 14, 2021).

elected" as head of HOA was protected opinion where defendant referenced HOA bylaws and supporting affidavits as support).[16]

Here, the Challenged Statements criticizing Dr. Immanuel's promotion of HCQ are all nonactionable opinion whose factual bases are disclosed. For instance, in disputing Dr. Immanuel's statement that the combination of HCQ, zinc, and Zithromax constitutes a "cure" for COVID-19 as "medically … simply not true," the First Cooper Report stated that "the most recent study" published in the New England Journal of Medicine – "a very, very reputable medical journal" – "showed no benefit and also revealed heart rhythm complications, which can be deadly."[17] Bolger Decl. Ex. A-9.  It also provided additional details about the study, including the number of participants and where it took place, noted that "other studies agree," and that the Food and Drug Administration, under Trump, revoked its emergency use authorization for HCQ.[18]  *Id.* The Stracqualursi Article, in disputing the same statement by Dr. Immanuel, highlights that "several high-quality studies … show the anti-malarial drug alone or in combination with others does not help Covid-19 patients."  Bolger Decl. Ex. A-14.

---

[16] *Accord Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("When an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."); *Dunn v. Gannett*, 833 F.2d 446, 454 (3d Cir. 1987) (statements were protected opinion where the underlying facts were disclosed and "readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified"); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) ("[a]ccusations of criminal activity, like other statements, are not actionable if the underlying facts are disclosed").

[17] The New England Journal of Medicine has published two studies showing that hydroxychloroquine is functionally useless in combatting COVID-19.  In one, a randomized, controlled trial showed that hydroxychloroquine had no impact on death for hospitalized COVID-19 patients.  *See* The RECOVERY Collaborative Group, *Effect of Hydroxychloroquine in Hospitalized Patients with Covid-19*, New England Journal of Medicine (October 8, 2020), https://www.nejm.org/doi/full/10.1056/NEJMoa2022926, (last visited Dec. 9, 2021).  In the other, a randomized, controlled trial showed that hydroxychloroquine did not improve the clinical status of patients as compared to standard care. *See* Cavalcanti, *supra* at n. 4.

[18] *See FDA cautions against use of hydroxychloroquine or chloroquine for COVID-19*, *supra* at n. 4.  The FDA's decision was based on a large, randomized clinical trial "that found these medicines showed no benefit for decreasing the likelihood of death or speeding recovery." *Id.*  And on July 1, 2020, the FDA released results of its review of safety issues with the drug, which included "serious heart rhythm problems …, blood and lymph system disorders, kidney injuries, and liver problems and failure." *Id.*

The Passantino Article goes into even more detail, basing its characterization of Dr. Immanuel's claim as "dubious" on a "study [that] found … neither hydroxychloroquine alone nor hydroxychloroquine plus azithromycin appeared to affect the condition of patients at the 15-day mark[, and that] … unusual heart rhythms and elevated liver-enzyme levels were more frequent in patients receiving hydroxychloroquine alone or with azithromycin." Bolger Decl. Ex. A-15.  And both the Second Cooper Report (which calls HCQ "unproven") and the Liptak Article reference descriptions by Dr. Anthony Fauci, the nation's top infectious disease specialist, of numerous different studies showing no efficacy for HCQ.  Bolger Decl. Exs. A-10, A-16. The Second Cooper Report also notes that the FDA revoked its emergency use authorization. Bolger Decl. Ex. A-10. In short, CNN made abundantly clear those facts on which it based its criticism of Dr. Immanuel's promotion of HCQ.  Challenged Statements 2, 3, 5, 7, and 8 are thus not actionable as defamation.

### E.     Several Challenged Statements Are Not "Of And Concerning" Dr. Immanuel

Next, to the extent Dr. Immanuel complains about statements CNN made about the effectiveness of HCQ, her Complaint should be dismissed, as those statements are not of and concerning her.  *See Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("A defamatory statement must be directed at the plaintiff as an ascertainable person to be actionable."); *In re Lipsky*, 460 S.W.3d at 593 (statement must be "defamatory concerning the plaintiff"). *Kaufman v. Islamic Soc. of Arlington*, 291 S.W.3d 130, 144 (Tex. App.—Fort Worth 2009, pet. denied). "The statement must 'point to the plaintiff *and to no one else*.'" *Main v. Royall*, 348 S.W.3d 381, 394-95 (Tex. App.—Dallas, 2011, no pet.) (quoting *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (Tex. 1960)) (emphasis added).  For a statement to "concern" Dr. Immanuel, "it must appear that [she] is the person with reference to whom the statement is made." *Newspapers,* 339 S.W.2d at 893. As the United States Supreme Court recognized nearly sixty

years ago in *N.Y. Times v. Sullivan,* this "of and concerning" requirement is necessary to prevent litigants like Dr. Immanuel from "transmuting criticism …, however impersonal it may seem on its face, into personal criticism, and hence potential libel." 376 U.S. 254, 292 (1964).

As discussed above, the crux of Dr. Immanuel's claim is that CNN claimed the "cure" she so publicly advocated – "hydroxychloroquine, zinc, and Zithromax," *see* Bolger Decl. Ex. A-15 – was in fact unproven and ineffective at treating or preventing COVID-19. Compl. ¶ 6; *see supra,* Section V.1.B.  Indeed, she devotes a large portion of her Complaint (nearly six of its nineteen pages) to reaffirming the effectiveness of HCQ. *See* Compl. ¶¶ 2-4, 6-7, 26.b. But when CNN asserts that studies show HCQ is "disproven and harmful" (Challenged Statement 6), that it is "unproven and potentially dangerous" (Challenged Statement 7) or simply "unproven" (Challenged Statement 1), it is not making any statement about *Dr. Immanuel*, and those criticisms cannot be transmuted into personal attacks on her reputation as a doctor. On the contrary, Dr. Immanuel is required to plead that a reasonable person understood CNN's assertions about HCQ to be about her specifically. *See Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.-Austin, 2007, rev. denied) (plaintiff must allege facts that support assertion "that persons … would understand the [statement] to refer to [her]").  Because she has not done so, and cannot do so, Dr. Immanuel cannot recover for those portions of Challenged Statements 1, 6, and 7 that are not of and concerning her.[19]

---

[19] Nor can statements that *explicitly* pertain to other individuals be said to concern Dr. Immanuel.  *Harvest House Publishers v. Loc. Church*, 190 S.W.3d 204, 213 (Tex. App. – Houston [1st Dist.] 2006, pet. denied Feb. 16, 2007) (dismissing claim on of-and-concerning grounds where plaintiff tried to hold defendant liable for passages in book that discussed criminal activity by others).  For instance, Dr. Immanuel alleges that CNN "impl[ied] [she] was peddling snake oil" in part based on CNN's comparison of "Pres. Trump to a 'snake oil salesman.'" Compl. ¶ 6; Bolger Decl. Exs. A-12, A-13; *see* Challenged Statement 6.  But CNN was clearly directing this statement at Trump not at Dr. Immanuel.  Similarly, Dr. Immanuel alleges that CNN claimed she was promoting "an unproven drug hydroxychloroquine."  Compl. ¶ 5.a.  As discussed above, this statement pertains to HCQ, not a person.  But even if it *could* reasonably be interpreted as attacking an identifiable person, that person could not be Dr. Immanuel, since the full, unedited statement reads "Trump Continues To Promote Unproven Drug Hydroxychloroquine."  *See* Bolger Decl. Ex. A-9; *see* Challenged Statement 1.

2.     **Dr. Immanuel Failed To Plausibly Plead Defamation By Implication**

In addition to her defamation claim, Dr. Immanuel asserts a separate cause of action for defamation by implication. *See* Compl. ¶¶ 28-32.  To the extent that defamation by implication is a valid cause of action in Texas – which CNN does not concede – it occurs "[w]hen a publication's text implicitly communicates a defamatory statement." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018). Where, as here, a plaintiff alleges "that the defamatory meaning arises implicitly from a distinct portion of the [challenged reports]," defamation is by "discrete implication" rather than by "gist."  *Id.* at 627, 635. Dr. Immanuel's defamation by implication claim is based on CNN's alleged juxtaposition of clips from her sermons and omission of "the biblical foundation for her ministry, the healing and spiritual nature of her prayer, and the fact that [the clips] had nothing to do with her medical practice, credentials and opinions," that create the "false impression" that Dr. Immanuel was not a competent doctor. Compl. ¶ 29. But Dr. Immanuel has failed to plausibly plead that any alleged juxtaposition or omission is actionable here.

*First*, as with Dr. Immanuel's explicit defamation claim, her defamation by implication claim must be dismissed because the Challenged Statements are constitutionally protected opinion. *Tatum*, 554 S.W.3d at 638; *see supra*, Section V.1.D.  From the context of the reports, it is plain that CNN believed Drs. Fauci, Birx, and Redfill to be more credible than Dr. Immanuel.  *See* Bolger Decl. Ex. A-9 ("Who's medical advice is the President of the United States now promoting? It's not Dr. Fauci. Not Dr. Birx. Not even Dr. Redfill from the CDC or the Surgeon General.");  Challenged Statement 2.  That opinion, however, is nonactionable, because CNN disclosed the facts underlying that opinion – *i.e.* both the statements Dr. Immanuel indisputably made about HCQ and the statements she made in her sermons at Fire Power ministries.  *See Tatum*, 554 S.W.3d at 639 (newspaper's "implied accusation of deception against" plaintiffs was protected opinion

where it was "reasonably based on … disclosed facts"); *El Paso Times, Inc. v. Kerr*, 706 S.W.2d 797, 800 (Tex. App. – El Paso 1986), *writ refused NRE* (July 16, 1986) (article constituted constitutionally protected opinion where it provided "the reader [its] reasons for … accus[ing the plaintiff] of cheating [so that] the reader could evaluate the facts and accept or deny the … opinion") (citing *Greenbelt Cooperative Publishing Association v. Bresler,* 398 U.S. 6 (1970)). The First Cooper Report, for example, notes that Dr. Immanuel "believes that women can be physically impregnated by witches in their dreams," and includes a clip from a sermon in which she claimed that "witch[es] astral project and sleep with people" (Challenged Statement 2). Bolger Decl. Ex. A-9. The First Cooper Report also discusses Dr. Immanuel's belief that "lusting after movie stars can conjure demons that can women physically pregnant with demon babies by impregnating them in their dreams" (Challenged Statement 2). *Id*. As support, CNN telecast a clip of Dr. Immanuel sermonizing on just this point. And the Stracqualursi Article notes that Dr. Immanuel has made videos stating that "they're trying to create a vaccine to make you immune from becoming religious" (Challenged Statement 3). Bolger Decl. Ex. A-14. Thus, CNN was not painting a portrait of Dr. Immanuel out of whole cloth – instead, CNN based its opinion on Dr. Immanuel's own words, words that CNN provided directly to its readers and viewers. Accordingly, to the extent any Challenged Statement can be read as asserting a defamatory implication intended by Defendants, based on these facts, it is a protected statement of opinion.

*Second*, to the degree Dr. Immanuel alleges that any defamatory implication is based on CNN's decision to omit from its articles and telecasts the precise biblical underpinnings of Dr. Immanuel's sermons, or her belief that the sermons do not reflect on her medical credentials, her claim fails. *See* Compl. ¶ 9. As an initial matter, "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of

public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo,* 418 U.S. 241, 258 (1974). *See also Huckabee v. Time Warner Entm't. Co.*, 19 S.W.3d 413, 426 (Tex. 2000) ("the First Amendment protects [an] organization's choice of which material to include in its broadcast"). Any omission was a matter of CNN's editorial choice and is to be given substantial deference.

Editorial omissions, therefore, are only actionable when they have a material effect on the impression taken away by the reader or viewer. *See id.* (to be actionable, editorial omission must "so change[] the character of the story that one could infer that the defendant knew, or at least suspected, that the omission would convey a false impression."). No such material effect is present here. Dr. Immanuel complains that CNN should have published that her sermons were based on Genesis 6 or the "healing … nature of [Dr. Immanuel's] prayer." Compl. ¶ 29. But these omissions are not material. CNN *explicitly* identifies Dr. Immanuel as a minister and makes clear that the clips included in the telecasts or quotes included in the articles were taken from her religious sermons. *See*, *e.g.*, Challenged Statement 2 ("that's Dr. Stella Immanuel who also has a ministry"); Challenged Statement 3 ("Immanuel … practices medicine at Rehoboth Medical Center, a clinic in Houston, and is the founder of the Fire Power Ministries church"); Challenged Statement 7 ("she is a doctor who also preaches"). Omitting the precise biblical citation does not "grossly distort the story" in any way. *Huckabee*, 19 S.W.3d at 426.

### 3.   Dr. Immanuel Failed To Plausibly Allege CNN Acted With Actual Malice

Finally, both Dr. Immanuel's defamation and defamation by implication claims fail on their face because she failed to plead that CNN acted with the requisite degree of fault – actual malice.

Dr. Immanuel must show that CNN acted with actual malice because she is a limited purpose public figure. *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 775 (Tex. App.—Dallas 2018, pet.

denied); *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-cv-379, 2016 WL 6666828, at *5 (E.D. Tex. Mar. 11, 2016). "Whether a person is a public figure is a question of law for the court to decide." *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To determine whether Dr. Immanuel is a limited public purpose figure, the Court must consider whether: (1) the controversy at issue is public; (2) Dr. Immanuel had "more than a trivial or tangential role in the controversy"; and (3) the alleged defamation was germane to Dr. Immanuel's participation in the controversy. *Mohamed*, 554 S.W.3d at 774. Each element is met here.

*First*, the controversies at issue – the COVID-19 pandemic, and Trump and Dr. Immanuel's promotion of HCQ as a treatment for the virus – are public, since their "ramifications will be felt by people who are not direct participants." *Id.*; *see also Press-Ent. Co. v. Super. Ct. of Calif. For Riverside Cty.*, 478 U.S. 1, 13 (1986); *Matherne v. Wilson*, 851 F.2d 752, 761 (5th Cir. 1988); *Wabakken v. Calif. Dept. of Corrections and Rehab.*, CV 12-1503-GW, , 2016 WL 8943297, at *12 (C.D. Cal. June 20, 2016). Second, Dr. Immanuel's involvement was far more than trivial or tangential. She chose "to engage in activities that involved increased public exposure and media scrutiny," *Mohamed*, 554 S.W.3d at 775 – namely, seeking out and engaging the media with regard to those controversies, by participating in a press conference on the steps of the United States Supreme Court that resulted in the President spreading her theories on Twitter, and by promoting herself on YouTube. Compl. ¶¶ 3, 9; *Mohamed*, 554 S.W.3d at 775 (holding plaintiff was limited purpose public figure when he "made national media appearances, received an invitation to visit the White House, and inspired a Halloween costume"); *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993) (same when plaintiff "actively participated in the controversy by appearing on television and giving interviews to magazines"); *see also Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1168 (E.D.N.Y. 2003) (same when plaintiff "agreed

to be interviewed by several reporters . . . to present his 'side of the story'"). Third and finally, the Challenged Statements are all germane to Dr. Immanuel's involvement because they all relate to either the controversies at issue themselves or her involvement therewith. *Mohamed*, 554 S.W.3d at 775. In short, Dr. Immanuel "'voluntarily engaged in a course that was bound to invite attention and comment.'" *Brueggemeyer v. Am. Broadcasting Co.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (quoting *Rosanova v. Playboy Ent., Inc.*, 580 F.3d 859, 861 (5th Cir. 1978)). She is therefore a limited purpose public figure who must plead actual malice.

To do so, Dr. Immanuel was required to "allege specific facts that plausibly evidence actual malice in a clear and convincing manner." *Palin v. New York Times Co.*, 264 F. Supp. 3d 527, 537 (S.D.N.Y. 2017), *rev'd on other rounds*, 940 F.3d 804 (2d Cir. 2019); *Shaunfield v. Experian Inf. Sols., Inc.*, 991 F. Supp. 2d 786, 807 n.22 (N.D. Tex. 2014). "Actual malice" does not simply mean "ill will," but rather publication of a false statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80; *see Penick*, 219 S.W.3d at 437. "Reckless disregard for the truth" is a subjective standard that requires a media defendant to have actually entertained "serious doubt about the truth of the article at the time it was published." *Id.*; *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (reckless disregard requires that a defendant "entertained serious doubts as to truth of [the] publication,"); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 162 (Tex. 2004). "Negligence, lack of investigation, or failure to act as a reasonably prudent person" are insufficient. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995). Dr. Immanuel has not met – and cannot meet – this high bar.

Here, Dr. Immanuel has not adequately alleged that CNN acted with actual malice. She makes only three attempts to do so. *First,* in seeming reference to the Challenged Statements

discussing demons and aliens, she alleges that CNN "fabricated … and falsely attributed statements to Dr. Immanuel" it knew she never made. But, as discussed above, she did in fact make those statements, in sermons she posted to her YouTube page. *See supra*, Section V.1.A.  Those allegations, therefore, cannot support allegations of actual malice.

*Second*, Dr. Immanuel claims that CNN "knew from prior reporting" that her statements about HCQ were true. But, as discussed above, CNN's characterization of HCQ as ineffective was explicitly predicated on numerous scientific studies and guidance from the federal government. *See supra*, Section V.1.B.  Such statements self-evidently cannot support a finding of actual malice, which rests on a defendant's subjective knowledge of, or reckless disregard as to, falsity. *See Carr*, 776 S.W.2d at 571 ("proof of [actual malice requires that] the plaintiff … present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'") (citing *St. Amant*, 390 U.S. at 731); *cf. Einhorn v. LaChance*, 823 S.W.2d 405, 412 (Tex. App. – Houston [1st Dist.] 1992), *writ dismissed w.o.j.* (June 3, 1992) (issue of actual malice did not pertain to statements that were "constitutionally protected opinion").[20]

*Third*, Dr. Immanuel's conclusory allegation that CNN "harbored an institutional hostility, hatred, extreme bias, spite and towards President Trump [and that t]his bias and prejudice motivated Cooper and CNN to publish the intentionally false statements about Dr. Immanuel," unsupported as it is by *any* facts, does not meet the standard required to plead actual malice. Compl. ¶ 26.c. Bias alone is not enough to establish actual malice. *See Dolcefino v. Turner*, 987 S.W.2d 100, 119 (Tex. App.-Houston [14th Dist.] 1998), *aff'd*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d

---

[20] As to her defamation by implication claim, Dr. Immanuel alleges no facts whatsoever supporting (plausibly or otherwise) any contention that CNN's juxtaposition of her statements, or omission of beneficial facts, was done with reckless disregard to the false impression that allegedly resulted.  *See* Compl. ¶¶ 28-32.

103 (Tex. 2000) (evidence that source was motivated by strong political bias did not amount to evidence of actual malice); *see also Palin*, 940 F.3d at 814 ("political opposition alone does not constitute actual malice"). Moreover, this "assertion is a legal conclusion that is not entitled to any deference." *Shaunfield*, 991 F. Supp. 2d at 807 n.22. Thus, even if Dr. Immanuel had pleaded any facts showing that CNN's coverage of her was politically motivated, she still would have failed to plead actual malice.

*Finally*, Dr. Immanuel claims that CNN's failure to contact her is evidence of actual malice. But "the law is clear that the public figures themselves need not be interviewed due to their personal bias and the likelihood of a denial." *Penick*, 219 S.W.3d at 444; *see also Hearst Corp.*, 159 S.W.3d at 637 ("failure to investigate the facts before they are published is insufficient to show actual malice.") (quoting *Bentley,* 94 S.W. 3d at 596); *Secord v. Cockburn*, 747 F. Supp. 779, 788 (D.D.C. 1990) (failure of author to apprise plaintiff of contents of book or give him the opportunity to correct errors prior to publication was not evidence of actual malice); *Davis v. Costa-Gavras*, 654 F. Supp. 653, 657 (S.D.N.Y. 1987) (failure to consult with plaintiff prior to making the film did not show actual malice). CNN was not required to reach out to Dr. Immanuel, and so its alleged failure to do so is not actual malice.

Dr. Immanuel has failed to adequately plead actual malice and therefore has not stated a plausible claim for defamation or defamation by implication. Her Complaint should be dismissed for this independent reason.

## VI.    <u>CONCLUSION</u>

For each of these reasons, the Court should dismiss Dr. Immanuel's claim against CNN. And because that claim fails as a matter of law, any request for leave to amend should be denied.

Dated: December 17, 2021                    Respectfully submitted,

                                            */s/ Robert P. Latham*
                                            Robert P. Latham
                                            State Bar No. 11975500
                                            blatham@jw.com
                                            Demi Williams
                                            State Bar. No. 24084101
                                            dswilliams@jw.com
                                            **JACKSON WALKER LLP**
                                            2323 Ross Avenue, Suite 600
                                            Dallas, Texas  75201
                                            (214) 953-6000 – Telephone
                                            (214) 953-5822 – Facsimile

                                            Katherine M. Bolger
                                            katebolger@dwt.com
                                            Sam F. Cate-Gumpert
                                            samcategumpert@dwt.com
                                            **DAVIS WRIGHT TREMAINE LLP**
                                            1251 Avenue of the Americas, 21st Floor
                                            New York, New York 10020-1104
                                            (212) 489-8230 – Telephone
                                            (212) 489-8340 – Facsimile
                                            *Pro Hac Application to be submitted*

                                            **ATTORNEYS FOR CABLE NEWS
                                            NETWORK, INC.**

## CERTIFICATE OF SERVICE

This is to certify that this document was served on all counsel of record through the Court's electronic filing system on December 17, 2021.

_/s/ Robert P. Latham_
Robert P. Latham