IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. STELLA IMMANUEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-22-2031 |
| | § | |
| CABLE NEWS NETWORK, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

One of the side effects of COVID-19 is litigation. Some of that litigation has arisen from the national conversation, medical and lay, over what medication is effective to prevent and treat COVID-19. The plaintiff in this case, Dr. Stella Immanuel, sought to be a visible public part of that national conversation. On July 27, 2020, she stood with a group calling themselves "America's Frontline Doctors" in front of the United States Supreme Court to publicly advocate the use of hydroxychloroquine ("HCQ") to treat COVID-19. (Docket Entry No. 1 at ¶ 3). "America's Frontline Doctors" is a political group of physicians "committed to educating the American public and political leaders" about HCQ treatment, "as well as other issues related to the COVID-19 pandemic, from an unbiased medical perspective." (*Id.*). Dr. Immanuel, a member of this organization, was not only there; she gave a speech, presenting in this very public forum her views about treating COVID-19 with HCQ.

A video of Dr. Immanuel's speech quickly went viral on the Internet. Then-President Trump tweeted about it. (*Id.* at ¶ 4). In response to Dr. Immanuel's speech, Cable News Network, Inc. ("CNN") published tweets and news broadcasts about her speech. (*Id.* at ¶ 5). Dr. Immanuel alleges that CNN accused her of "'spreading conspiracy theories on COVID-19' and promot[ing]

an 'unproven drug'" as an effective treatment option. (*Id.* at ¶ 5). According to Dr. Immanuel, CNN also disparaged her personal and religious beliefs by publicizing her words and writings that she had made in sermons she posted on her YouTube channel for her church. (*Id.*). The statements included that Dr. Immanuel:

- "believes that women can be physically impregnated by witches in their dreams";
- "believes that lusting after movie stars can conjure demons that can make women physically pregnant with demon babies by impregnating them in their dreams";
- "has . . . claimed that sex with 'tormenting spirits' is responsible for gynecological problems, miscarriages, and impotence"; and
- "has claimed alien DNA was used in medical treatments."

(*Id.* at ¶ 5).

"Dr. Immanuel contends that the clear [ ] gist of CNN's statements . . . is that [she] is unfit to be a medical doctor, that her medical judgments and advice are unsafe and/or unsound, and that she peddles disinformation, including harmful medical treatments, and therefore, endangers patients." (Docket Entry No. 15 at 6). In July 2021, Dr. Immanuel sued CNN in the Eastern District of Texas, alleging defamation. She sought $100 million in damages. Venue was transferred to this court, CNN moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), and Dr. Immanuel responded. Based on the motion, the responses, and the applicable law, the motion to dismiss, Docket Entry No. 11, is granted. Because amendment would be futile, this case is dismissed, with prejudice. Final judgment is entered by separate order.

The reasons are set out below.

I. **The Legal Standards**

    A.     **A Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do*.*" *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise

3

a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation marks and alteration omitted). A court may deny leave to amend for futility if an amended complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). The district court has discretion to grant or deny leave to amend. *Id.*

### B. Defamation Claims

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (quoting *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)).[1] Defamation can be oral or written—that is, slander or libel. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); see Tex. Civ. Prac. & Rem. Code § 73.001. A defamation claim requires plausibly alleged facts showing that the defendant published a statement; that was defamatory concerning the plaintiff; while acting with either actual malice, if the plaintiff . . . . a public figure, or negligence, if the plaintiff was private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 987 S.W.2d 568, 571 (Tex. 1998).

In reviewing a Rule 12(b)(6) motion, a court is confined to the pleading allegations and documents that are referred to in the complaint and central to the claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). On a motion to dismiss, courts may consider the allegedly defamatory publications. *See Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 19-CV-2074-G, 2021 WL 3618113 (N.D. Tex. Aug. 16, 2021); *Nguyen v. Hoang*, 318 F. Supp. 3d

---

[1] The parties agree that Texas law applies to this dispute.

983, 998 (S.D. Tex. 2018). In this case, relevant documents include copies of Dr. Immanuel's speech in front of the Supreme Court that led to the tweets by then-President Trump about Dr. Immanuel, which in turn led to the CNN coverage. Much of the CNN coverage used quotes from Dr. Immanuel herself, taken from videos, articles, and other internet sources.

## II. Analysis

### A. Falsity

A statement must be false to be defamatory, and when a statement is on a matter of public concern, falsity is an element that a defamation plaintiff must plausibly plead against a media defendant. *KBMT Operating Co. LLC v. Toledo*, 492 S.W.3d 710, 713–714 (Tex. 2016). CNN moves to dismiss because the record clearly shows that it accurately quoted Dr. Immanuel's public statements about HCQ as a COVID treatment and President Trump's public tweets in support of the views Dr. Immanuel expressed. The record does not support an inference that CNN's statements about what Dr. Immanuel said in her speech, or what she had said on her own website and social media platforms, were false. Nor is there a basis to infer that CNN falsely described government guidance against HCQ, studies showing HCQ to be ineffective in treating COVID, or the FDA's warnings against HCQ as a treatment for COVID. There is no basis to infer that CNN's coverage of Dr. Immanuel's speech was false. CNN accurately reported what she had said and the positions that government agencies and others had taken on medication for COVID.

Dr. Immanuel does not limit her defamation claim to the coverage of her speech. She also alleges that CNN defamed her by publishing statements she herself had made about her religious beliefs and their impact on her views about medical treatment. The alleged defamation consisted of CNN playing and reporting about statements from Dr. Immanuel's own sermons posted on her YouTube channel for the Fire Power Ministries Church. Dr. Immanuel alleges that CNN's

coverage was defamatory. But there is no basis to infer that CNN was defamatory in its largely verbatim quotations about what Dr. Immanuel had said and published on her YouTube channel.

Some of CNN's descriptions slightly deviate from the precise wording of what Dr. Immanuel had said in her own sermons that she posted on her YouTube channel. But those deviations are slight and do not make the statements defamatory. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("If an author alters a speaker's words but effects no material change in meaning, including any meaning conveyed by the manner or fact of expression, the speaker suffers no injury to reputation that is compensable as a defamation."); *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990). Dr. Immanuel stated that "they're [medical science] using alien DNA to treat people." (Docket Entry No. 11 at 11). CNN quoted her as saying that "[A]lien DNA was used in medical treatments." (*Id.* at 12). Dr. Immanuel stated that "medical sciences have gotten to the fact that there are children being born that are transhuman[s]"; that "they are . . . mixing human beings with demons"; and that women can get pregnant through "astral sex" with a "human being that's a witch," or with "incubuses and succubuses" that steal sperm and "turn into a man and . . . sleep with another woman and deposit the sperm and produce more of themselves." (Docket Entry No. 11-7 at 3; Docket Entry No. 11-3 at 9, 13). CNN used the phrase "demon sperm," which Dr. Immanuel did not specifically say, but which she clearly described. (Docket Entry No. 11-3 at 13).

Because CNN reported what Dr. Immanuel had said, primarily using her own words and videos, the reports that she had said what she said are not materially false and cannot be the basis of a claim for defamation. The slight variations between Dr. Immanuel's precise words and CNN's paraphrases are not actionable. *See Masson*, 501 U.S. at 516.

6

Dr. Immanuel faults CNN for commenting on what she said as a religious figure, rather than as a medical doctor. One problem with her argument is that some of her statements on her church website are statements about medicine, including the causes of pregnancy, various gynecological and obstetrical conditions, and vaccinations. A second problem with her argument is that once she injected herself into the public debate over medical treatments for COVID, her opinions about medical treatment in general became the legitimate subject of news coverage, as long as the news coverage did not falsely report those opinions. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). And, as explained further below, once Dr. Immanuel injected herself into the public debate over medical treatments for COVID, she became a limited purpose public figure whose background and credibility were legitimate subjects of inquiry. *See id.* ("Those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of particular controversies involved . . . . [T]hey invite attention and comment.").

CNN fairly reported what Dr. Immanuel had said about medical treatment of COVID and more general statements about medical treatment and science. Those reports are not defamatory, as a matter of law.

**B.     Opinion**

Dr. Immanuel alleges that CNN defamed her by covering her statements advocating and promoting HCQ to treat COVID and by criticizing her views as disinformation supporting harmful medical treatments. Statements of different, even conflicting, opinions, about unsettled matters of scientific or medical treatment that are the subject of ongoing public debate and deep public interest, cannot give rise to defamation claims. *See, e.g., ONY Inc., v. Cornerstone Therapeutics Inc.*, 720 F.3d 490, 497–98 (2d Cir. 2013); *Arthur v. Offit*, Case No. 09-cv-1398, 2010 WL 883745,

at *6 (E.D. Va. Mar. 10, 2010); *cf. Ioppolo v. Rumana*, 581 F. App'x 321, 330–31 (5th Cir. 2014). Courts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease.

*Arthur v. Offit* is a good example. The plaintiff in that case sued a magazine publisher over a statement accusing the plaintiff of lying about the effectiveness of vaccines. The court dismissed, holding that given the scientific uncertainty at the time, the media statement "lack[ed] the provably false content that is required to support a defamation action." 2010 WL 883745, at *3, 6. The court noted that judges were ill equipped to decide "the thorny and extremely contentious debate over the perceived risks of certain vaccines, their theoretical association with particular diseases or syndromes, and, at bottom, which side of th[e] debate has 'truth' on their side." *Id*. at *6. The *Arthur* court recognized that the plaintiff might wish to defend her views, but that was not enough to support a defamation action. The questions to be decided were "academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action." *Id*.; *see* (Docket Entry No. 11 at 15). The same is true here. Dr. Immanuel cannot bring a defamation claim on the basis of CNN's statements of its opinion about Dr. Immanuel's public support of a COVID treatment that many scientists had rejected.

### C. Fair Comment on Matters of Public Concern

The law has long been clear that news organizations reporting and commenting on matters of public concern may do so as long as the reports and comments are "the honest expression of opinion on matters of legitimate public interest." *Bently v. Button*, 94 S.W.3d 561, 579 (Tex. 2020) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990)); TEX. CIV. PRAC. & REC. CODE § 73.002(b)(2). The fair comment privilege clearly applies to the CNN coverage that Dr. Immanuel challenges. CNN's challenged reports focused on the reliability of a doctor who was promoting a

8

highly disputed treatment for a highly contagious virus that had already killed 150,000 people in the United States by mid-summer 2020.  Statements promoting HCQ treatments for COVID, and the president's praise of those statements, were contrary to the positions taken by government officials and many medical experts.   These statements are clearly about matters of public concern.  And there is no basis in the record to find that CNN was unfair or inaccurate in reporting Dr. Immanuel's statements and the president's response.  CNN's reports often quote Dr. Immanuel.  To the extent the reports characterize or offer comments about her views, they are factually consistent with the sources used, including Dr. Immanuel herself.  CNN's coverage also fairly commented on the positions and opinions about HCQ held by the federal government, including the FDA (which had revoked its emergency use authorization for HCQ), and including studies on the ineffectiveness of HCQ and its potential risk of heart complications.  (Docket Entry Nos. 11-15, 11-16, 11-17).

Because the CNN reports are fair comments expressing opinions on matters of grave public concern, and because the reports disclose the factual basis for those opinions, including medical journal articles and statements by the FDA and government officials, the reports are not actionable as defamatory statements about Dr. Immanuel.

### D. Rhetorical Expression

CNN correctly notes that the vigorous nature of the challenged statements criticizing not only Dr. Immanuel's views, but also President Trump's, do not make the statements defamatory.  Media commentary can be sharp without being defamatory.  *See, e.g., Milkovich*, 497 U.S. at 17; *Phantom Touring, Inc., v. Affiliated Pubs.*, 953 F.2d 724, 728 (1st Cir. 1992) (the phrases "snake-oil" and "rip-off" to describe certain practices were rhetorical and not defamatory); *Tate v. Bradley*, 837 F.2d 206, 209 (5th Cir. 1988) (recognizing the difference between "remarks that are simply,

generically insulting from those that are so harmful as to be defamatory per se"). CNN's statements characterizing those promoting HCQ to treat COVID—statements that did not name Dr. Immanuel—as peddling "conspiracy theories" or "snake oil" are not actionable because they use colorful and rhetorical language.

### E. Malice

Dr. Immanuel stepped onto a very public stage when she gave her speech on the steps of the United States Supreme Court. Even before that, she used YouTube and other social media platforms to promote her theories. She attracted the president's, and then the media's, attention as a result. She cannot complain because she got the attention she sought.

Dr. Immanuel weighed in on controversial issues of public concern—how to medically treat COVID. The ramifications of the debate "will be felt by [people] who are not direct participants." *Mohamed v. Cntr. for Sec. Pol'y*, 554 S.W.3d 767, 774 (Tex. App.—Dallas 2018, pet. denied). Dr. Immanuel had more than a trivial or tangential role in the controversy, as evidenced by her participation in the speech in a political gathering of like-minded doctors before the United States Supreme Court, and by her Internet discussions about vaccinations and medicine in general. Dr. Immanuel "engage[d] in activities that involved increased public exposure and media scrutiny." *Id.* at 775; *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993). CNN's statements concerned Dr. Immanuel's participation in promoting a controversial COVID treatment and her contributions to the debate.

Because Dr. Immanuel chose to participate in activities that were bound to invite attention and comment, she is a limited purpose public figure. *See, e.g.*, *Brueggemeyer v. Am. Broad. Co., Inc.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988). To plead defamation, she must allege clear and

specific evidence" of actual malice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019).

Actual malice is more than ill will. Actual malice in the present context is the publication of a false statement "with 'knowledge of its falsity or with reckless disregard as to its truth.'" *Smith v. Wal-Mart Stores, Inc.*, 980 F.3d 1060, 1063 (5th Cir. 2020) (quoting *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)). A media defendant has reckless disregard for the truth when it actually "entertain[s] serious doubts as to truth of [its] publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995).

Dr. Immanuel does not adequately or plausibly allege that CNN acted with actual malice. First, she alleges that CNN attributed statements to her that she did not make. (Docket Entry No. 1 at ¶ 26). The record makes this allegation implausible, because CNN used so many of her own words, from her speech and from the sermons she posted to her YouTube page.

Second, she alleges that CNN "knew from prior reporting" that her statements about HCQ were true. (*Id.*). Dr. Immanuel does not point to the prior reporting she relies on. The record is clear that CNN included scientific studies and federal government guidance in stating its opinion that HCQ was ineffective as a COVID treatment. There is no basis to infer that CNN believed that, contrary to its criticisms about Dr. Immanuel's medical treatments, HCQ was a safe and effective approach to COVID.

Third, Dr. Immanuel alleges that CNN had a deep bias, not toward her, but toward then-President Trump, that influenced its negative comments about her COVID treatment opinions. (*Id.*). Political bias does not equate to evidence of actual malice in statements made about a limited purpose public figure, such as Dr. Immanuel. *Dolcefino v. Turner*, 987 S.W.2d 100, 119 (Tex.

App.—Houston [14th Dist.] 1998) ("Political motivation does not equate with knowing or reckless falsity."); *aff'd*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000).

Dr. Immanuel has failed to plausibly allege the malice element necessary for her claim. Her defamation claim fails on this basis as well.

## III.     Conclusion

Dr. Immanuel raises some other points, but none can make up for the deficiencies already identified and discussed. CNN's thorough response to the complaint in the motion to dismiss adequately addresses those other points as well. Dr. Immanuel's defamation claims are insufficiently pleaded, and there is no basis to infer that amendment would be anything but futile. This case is dismissed, with prejudice. Final judgment is separately entered.

SIGNED on August 1, 2022, at Houston, Texas

_____
Lee H. Rosenthal
Chief United States District Judge